**William K. VanCanagan**
**J.R. Casillas**
Datsopoulos, MacDonald & Lind, P.C.
201 West Main Street, Suite 201
Missoula, MT 59802
Phone: (406) 728-0810
Fax: (406) 543-0134
Email: bvancanagan@dmllaw.com, jcasillas@dmllaw.com

**Attorneys for Plaintiff, Bravo Entertainment, Inc.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BRAVO ENTERTAINMENT, INC., a Delaware corporation, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES** |
| SIMBA DEVELOPMENT, LLC, a Montana limited liability company; ROCKY MOUNTAIN DEVELOPMENT GROUP III, INC., a Montana corporation; RICHARD WISHCAMPER, an Individual; WILMA ENTERPRISES, LLC, a Montana limited liability company; WILMA THEATRE REAL ESTATE LLC, a Montana limited liability company; and NICHOLAS CHECOTA, an Individual, | |
| Defendants. | |

COMES NOW the Plaintiff, BRAVO ENTERTAINMENT, INC., by and though its counsel of record, Datsopoulos, MacDonald & Lind, P.C., and for its Complaint against the Defendants complains and avers as follows:

## PRELIMINARY STATEMENT

Plaintiff Bravo Entertainment, Inc. ("Plaintiff" or "Bravo Entertainment") brings claims and seeks damages against Defendants Simba Development, LLC, Richard Wishcamper, Wilma Enterprises, LLC, and Nicholas Checota for anti-competitive behavior and for the tort of inducing termination of a contract.

## PARTIES

1.      Plaintiff Bravo Entertainment, Inc. is a Delaware corporation with its principal place of business located in Boise, Ada County, Idaho.   Bravo Entertainment also does business under the name Knitting Factory Presents.

2.      Defendant Simba Development, LLC ("Simba Development"), is a Montana limited liability company with its principal of business in Missoula, Montana.

3.      Defendant Rocky Mountain Development Group III, Inc. is a Montana corporation with its principal place of business in Missoula, Montana.

4.      Richard Wishcamper is an individual who is believed to reside in Missoula, Montana.  Mr. Wishcamper is also believed to be the principal for Simba

Development and its manager, Rocky Mountain Development Group III, Inc., who also serves as manager of Simba Entertainment LLC, a non-party to this action.

5.      Defendant Wilma Enterprises, LLC, is a Montana limited liability company with its principal place of business in Missoula, Montana.

6.      Defendant Wilma Theatre Real Estate LLC is a Montana limited liability company with its principal place of business in Missoula, Montana.

7.      Defendant Nicholas Checota is an individual who is believed to reside in Missoula, Montana.  Mr. Checota is also believed to be the principal and/or sole owner of Wilma Enterprises, LLC and Wilma Theatre Real Estate LLC.  Mr. Checota is also believed to be the principal and sole owner of Top Hat-branded entities engaging in entertainment booking in Missoula, Montana.

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1332, as the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

10.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs and by reference incorporates each paragraph herein.

11.     Simba Development acquired The Wilma Theatre in Missoula, Montana, on about May 29, 2007.

12.     Simba Development is believed to have leased The Wilma Theatre to Simba Entertainment on an exclusive basis beginning on or about May 29, 2007.

13.     In or about June 2007, Simba Development began using Bravo Entertainment to book at least some of the shows into The Wilma Theatre.

14.     By July 2007, Mr. Checota had approached Mr. Wishcamper with an offer to purchase Mr. Wishcamper's entertainment-based businesses, Simba Entertainment and Simba Development.

15.     As part of the discussion between Mr. Checota and Mr. Wishcamper, Mr. Checota represented his Top Hat-branded entertainment business and talent buying services for smaller venues as out-competing Mr. Wishcamper and his entertainment business and talent buying services in the Missoula market.

16.     Mr. Wishcamper, who had no experience in the entertainment industry, believed Mr. Checota to be a viable threat to Mr. Wishcamper's entertainment businesses' ability to remain going concerns in the Missoula market.

17.     Rather than sell to Mr. Checota, Mr. Wishcamper sought other avenues in an attempt to fairly, but more effectively, compete in the Missoula entertainment market.

18.     On or about July 11, 2014, Simba Entertainment, through Mr. Wishcamper, agreed to enter into a Facilities Management Agreement ("FMA") with Bravo Entertainment for the purpose of assisting Mr. Wishcamper and his entertainment entities operating in the Missoula entertainment market.

19.     The FMA is a fixed five-year agreement for Bravo Entertainment's provision of facilities management and talent buying services for The Wilma Theatre beginning July 14, 2014, and ending June 30, 2019, unless terminated pursuant to the terms of the FMA.

20.     The FMA requires Simba Entertainment to pay Bravo Entertainment $85,000 annually for five years.

21.     The FMA also compensates Bravo Entertainment by giving Bravo Entertainment, *inter alia*, the following from The Wilma Theatre's operations:

        a.  Ticket Fee in the amount of at least $1.00 per ticket;

        b.  Concessions Fee in the amount of Fifteen Percent (15%) of the gross annual concessions above $300,000; and

        c.  Sponsorship Revenue in the amount of Fifty Percent (50%) of the total sponsorship amount received.

22.     By about February 2015, Mr. Checota had threatened Mr. Wishcamper with the destruction of Mr. Wishcamper's entertainment-based businesses, Simba Entertainment and Simba Development, by Mr. Checota's

continued operation of his Top Hat-branded entities plus construction of a venue sized to compete directly with Mr. Wishcamper's Wilma Theatre entities.

23.     Mr. Checota threatened Mr. Wishcamper in an attempt to force Mr. Wishcamper to sell his entity businesses to Mr. Checota, thereby eliminating Mr. Wishcamper as Mr. Checota's competitor while also eliminating Bravo Entertainment as a competitor.

24.     On February 20, 2015, about seven months into the FMA, Mr. Wishcamper and Simba Entertainment purported to terminate the FMA and, in so doing, breached the FMA.

25.     Simba Entertainment's wrongful termination of the FMA was induced by Richard Wishcamper, Simba Development, Rocky Mountain Development Group, Wilma Theatre Real Estate, Wilma Enterprises, and Nicholas Checota – all of whom were aware of the FMA.

26.     On February 24, 2015, Bravo Entertainment advised Mr. Wishcamper in writing that the termination of the FMA was wrongful.

27.     On or about March 10, 2015, Mr. Wishcamper, Simba Development and Rocky Mountain Development Group entered into agreements with Wilma Theatre Real Estate, Wilma Enterprises, and Mr. Checota with the express intent of ending Bravo Entertainment's FMA and with the intention of hurting Bravo

Entertainment's ability to book and market shows at The Wilma Theatre and in Missoula, generally.

28.     One such agreement was for Mr. Checota and Wilma Enterprises' purchase of personal property and business owned by Mr. Wishcamper under the Simba Entertainment name, which was located and indelibly intertwined with The Wilma Theatre.   That agreement (a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure) expressly states that Mr. Wishcamper and Simba Entertainment must terminate Bravo Entertainment's FMA at The Wilma:

> C.      The closing of this transaction is expressly contingent upon Simba Entertainment terminating, prior to or simultaneously with closing, all existing contracts (except those described in the preceding Section 8.B.), including, but not limited to, the existing Facilities Management Agreement between the Knitting Factory and Simba Entertainment ("KF Agreement").   The parties agree that should either party be unable to release the above mentioned contingency by 5:00 PM Mountain Standard Time on Wednesday, March 11, 2015, this Agreement shall be terminated unless the parties mutually agree in writing to extend this contingency.

(Ex. A, ¶ 5.C, S&P Agreement, Mar. 10, 2015.)

29.     Also on March 10, 2015, Bravo Entertainment advised Mr. Wishcamper and his Simba entities in writing that the purported termination of the FMA was wrongful.

30.     On or about March 13, 2015, Mr. Wishcamper, Simba Development, Rocky Mountain Development Group, Wilma Theatre Real Estate, Wilma Enterprises, and Mr. Checota amended the March 10, 2015 Sale and Purchase

Agreement to further confirm that the FMA plus all contracts and agreements related to Bravo Entertainment must be terminated as a condition of closing. That agreement (a true and correct copy of which is attached hereto as Exhibit B and incorporated herein by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure) reads, in part:

> 3.    Section 5.C. of the Agreement is amended to read as follows:
>
> "The closing of this transaction is expressly contingent upon Seller terminating, prior to or simultaneously with closing, all existing contracts (except those expressly described in the preceding Section 5.B. as being assigned and assumed). Notwithstanding any other language in this Agreement, the parties understand and agree that the KF Agreement and all contracts and agreements related to the KF Agreement must be terminated prior to or at closing. The parties agree that should either party be unable to release the above mentioned contingency by 5:00 PM Mountain Standard Time on March 13, 2015, this Agreement shall be terminated unless the parties mutually agree in writing to extend this contingency."

(Ex. B, Undated Amendment to S&P Agreement.)

31.    Another agreement among the Defendants was for Mr. Wishcamper and Simba Development's sale of The Wilma Theatre real property to Mr. Checota and Wilma Theatre Real Estate which, like the above-referenced Sale and Purchase Agreement, was closed on March 13, 2015.

32.    It is also believed that other agreements exist which show that Mr. Wishcamper, Simba Development, and Rocky Mountain Development Group entered into arrangements with Wilma Theatre Real Estate, Wilma Enterprises, and Mr. Checota with the express intent of ending Bravo Entertainment's FMA and

with the intention of hurting Bravo Entertainment's ability to book and market shows at The Wilma Theatre and in Missoula, generally.

33.    Mr. Wishcamper, Simba Development, Rocky Mountain Development Group, Wilma Theatre Real Estate, Wilma Enterprises, and Mr. Checota closed on their agreements that resulted in the wrongful termination of the FMA, Bravo Entertainment's loss of the ability to perform the FMA or receive the benefits from the FMA, loss of Bravo Entertainment's ability to book and market shows at The Wilma Theatre, and loss of Bravo Entertainment's ability to compete in the entertainment market in Missoula, Montana.

34.    The Defendants acted in such a manner that the identities of the entity Defendants were disregarded and should be disregarded in this lawsuit such that all Defendants are held jointly and severally liable.

35.    Defendant entities Simba Development acted through Mr. Wishcamper and Rocky Mountain Development Group III, which acted through Mr. Wishcamper.

36.    Mr. Wishcamper controlled and used Simba Development and Rocky Mountain Development Group III in an attempt to wrongfully evade liability incurred by Simba Entertainment under the FMA while further profiting personally through his closely-held entities.

37.     Defendant entities Wilma Enterprises acted through Mr. Checota and Wilma Theatre Real Estate acted through Mr. Checota.  Mr. Checota specifically formed each entity for the purposes of carrying out the wrongful agreements he had with Mr. Wishcamper and his controlled Defendant entities that were designed to eliminate Mr. Checota's competition in the Missoula, Montana, entertainment market and to profit personally through his closely-held entities.

## COUNT I

### UNLAWFUL RESTRAINT OF TRADE
### As Against All Defendants
### (Montana State Code § 30-14-205)

38.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

39.     Montana Code § 30-14-205 provides: "It is unlawful for a person or group of persons, directly or indirectly: (1) to enter an agreement for the purpose of fixing the price or regulating the production of an article of commerce; … ." Montana Code § 30-14-202(1)(a) provides: "Article of commerce" includes service or output of a service trade.

40.     Montana Code § 30-14-201 provides: "The legislature declares that the purpose of this part is to safeguard the public against the creation or perpetuation of monopolies and foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is

destroyed or prevented.  This part must be liberally construed so that its beneficial purposes may be accomplished."

41.    Montana Code § 30-14-203 provides: "Any person who, either as director, officer, or agent of any business or as agent of any person, assists or aids, directly or indirectly, in a violation of this part is responsible for the violation equally with the person or business for whom or for which the person acts."

42.    The acts and agreements of Defendants had the effect of stifling and discouraging competition in the entertainment business in Missoula, Montana, while creating a monopoly to be overcome and for the purposes of fixing or regulating the price or production of entertainment services and talent buying for the Missoula, Montana, market.

43.    As a direct and proximate result of Defendants' conduct, Bravo Entertainment has and will continue to suffer actual damages and attorney fees and costs, in amounts to be determined at trial.

44.    As a direct and proximate result of Defendants' conduct, and pursuant to Montana Code § 30-14-222, Bravo Entertainment is entitled to recover three-times its damages plus its attorney fees and costs.

## COUNT II

### TORT OF INDUCED TERMINATION OF CONTRACT
### As Against All Defendants

45.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

46.     Under Montana law it is a legal wrong for a person or entity to break up or interfere with contractual relations subsisting between other persons.

47.     The FMA is a valid and enforceable contractual relationship existing between Bravo Entertainment and Simba Entertainment, with past, present, and future economic value and other benefit to Bravo Entertainment.

48.     As a direct and proximate result of Defendants' conduct, which was wrongful, the relationship that existed under the FMA, and all benefits derived thereby, were interfered with and broken up.

49.     As a direct and proximate result of Defendants' conduct, Bravo Entertainment has and will continue to suffer actual damages, in amounts to be determined at trial.

50.     As a direct and proximate result of Defendants' conduct, Bravo Entertainment is entitled to recover from the Defendants its damages plus attorney fees and costs incurred as a result of having to bring this matter.

## COUNT III

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**As Against All Defendants**

51.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

52.     The FMA is a valid and enforceable contractual relationship existing between Bravo Entertainment and Simba Entertainment, with past, present, and future economic value and other benefit to Bravo Entertainment.

53.     Simba Entertainment's refusal to perform the FMA was induced by the unlawful and malicious acts of Defendants.

54.     As a direct and proximate result of Defendants' conduct, Bravo Entertainment has and will continue to suffer actual damages, in amounts to be determined at trial.

## COUNT IV

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC**
**ADVANTAGE**
**As Against All Defendants**

55.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

//

//

56.     The FMA is a valid and enforceable contractual relationship existing between Bravo Entertainment and Simba Entertainment, with past, present, and future economic value and other benefit to Bravo Entertainment.

57.     Defendants' interference with the FMA was intentional and willful and calculated to cause damage to Plaintiff's business while enhancing their own businesses and themselves, personally.

58.     Defendants' conduct was done with the unlawful purpose of causing damage or loss to Plaintiff without right or justifiable cause.

59.     As a direct and proximate result of Defendants' conduct, Bravo Entertainment has and will continue to suffer actual damages, in amounts to be determined at trial.

## COUNT V

### PUNITIVE DAMAGES
### As Against All Defendants

60.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

61.     Defendants' tortious conduct was carried out with actual malice, as they had knowledge of facts, or intentionally disregarded facts, that created a high probability of injury to the Plaintiff and where Defendants deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to the

Plaintiff, and/or deliberately proceeded to act with indifference to the high probability of injury to the Plaintiff.

## COUNT VI

### ALTER EGO LIABILITY
### As Against Defendants Wishcamper and Checota

62.     Plaintiff realleges and incorporates all of the foregoing allegations as if fully set forth herein.

63.     Defendant entities Simba Development and Rocky Mountain Development Group III are the alter egos of Mr. Wishcamper such that Mr. Wishcamper should be held personally liable for Defendant entities Simba Development and Rocky Mountain Development Group III's tortious conduct.

64.     Mr. Wishcamper, as the managing member of Simba Development and Rocky Mountain Development Group III, controlled and used Simba Development and Rocky Mountain Development Group III in an attempt to wrongfully evade liability incurred by Simba Entertainment under the FMA while further profiting personally through his closely-held entities.

65.     Defendant entities Wilma Enterprises and Wilma Theatre Real Estate are the alter egos of Mr. Checota such that Mr. Checota should be held personally liable for Defendant entities Wilma Enterprises and Wilma Theatre Real Estate's tortious conduct.

COMPLAINT FOR DAMAGES                                                    – 15

66.   Mr. Checota, as the managing member of Wilma Enterprises and Wilma Theatre Real Estate, controlled and used Wilma Enterprises and Wilma Theatre Real Estate for the purposes of carrying out the wrongful agreements he had with Mr. Wishcamper and his controlled Defendant entities that were designed to eliminate Mr. Checota's competition in the Missoula, Montana, entertainment market and to profit personally through his closely-held entities.

## ATTORNEY FEES AND COSTS

Plaintiff has been forced to incur attorney fees and costs related to the prosecution of this matter.  Plaintiff is entitled to recover its reasonable costs and attorney fees pursuant to Montana Code Annotated § 30-14-22; Federal Rule of Civil Procedure 54; and other applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants as follows:

1.   An award of special damages for Plaintiff's losses incurred as a result of the Defendants' conduct;

2.   An award of three-times Plaintiff's actual damages plus its attorney fees and costs pursuant to Montana Code § 30-14-22;

3.   An award of punitive damages;

COMPLAINT FOR DAMAGES                                                                 – 16

4.      An award of pre-judgment and post-judgment interest as allowed by law;

5.      Reasonable attorney fees incurred in the prosecution of this action, or, in the event judgment is taken by default against any Defendant, the amount of $5,000 against each defaulting Defendant; and

6.      All other and further relief as the Court deems just and equitable, and to which Plaintiff is due as a matter of law and equity.

DATED this 16th day of July, 2015.


/s/ William K. VanCanagan
William K. VanCanagan
J.R. Casillas
DATSOPOULOS, MacDONALD & LIND, P.C.
*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES                                                    – 17